Dionisio Trigo, Plaintiff and Appellee, *v.* Dr. M. Juliá et al., Defendants and Appellants.

No. 7220. Argued May 21, 1937.—Decided May 26, 1937.

*Juan B. Soto, Juan F. Soto,* and *Enrique Igaravídez* for appellants.
*R. Díaz Collazo* for appellee.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the court.

This is an action to enforce a contract, based on an agreement which is set forth in the following communication, addressed by the defendants to the plaintiff:

"San Juan, P. R.—December 4, 1930.—Mr. Dionisio Trigo, San Juan, P. R.—Dear Sir: With reference to the agreement which you signed with the Saldaña Crosas Realty Corporation, relating to the exchange of the bonds of said corporation that you possess for those newly issued, we take great pleasure in stating that it has been agreed by us that if at any time you should need to dispose of the newly issued bonds you may give us an advance notice of thirty days, within which we shall purchase from you the said exchanged bonds at their value, plus the corresponding interest thereon.—Correct *("vale")* (Sgd.) Dr. E. A. Goenaga.—Very truly yours, (Sgd.) Dr. M. Juliá. —(Sgd.) Dr. Esteban A. Goenaga."

In the complaint it was alleged that on different occasions the plaintiff has requested the defendants to fulfill the obligation above transcribed, allowing them the agreed term of thirty days for this purpose, and that the last demand was made on February 6, 1934, in a letter which the plaintiff addressed to each of the defendants and which they received by registered mail. It is set forth therein that the plaintiff has at the disposal of the defendants the bonds to which the above-quoted obligation refers, and that the interest accrued during the semester from July 1 to December 31, 1934, was not paid and is owing by the Saldaña Crosas Realty Corporation as well as the interest that has been accrued subsequent to December 31, 1934.

It was further alleged that notwithstanding the demands made, especially the last one, which took place on February 6, 1934, the defendants have not fulfilled the contracted obligation.

In the answer, the contract made by the parties was admitted, but it was alleged that on June 13, 1932, said contract was rescinded by virtue of an agreement entered into between the plaintiff and the defendants on or about June 6, 1932. On that day the plaintiff agreed with the defendants that if the latter requested and obtained from the Saldaña Crosas Realty Corporation the adoption of a resolution to insure its properties against fire in any of the insurance companies in which the plaintiff was interested, the said contract would be rescinded immediately upon the adoption of such resolution by the corporation. The defendants went on to allege that said corporation, by the unanimous vote of its directors on June 13, 1932, adopted the following resolution, notice of which was given to the plaintiff:

"*First:* That the Saldaña Crosas Realty Corporation hereby records its appreciation to Messrs. Goenaga and Juliá of their disinterested attitude in having signed the letter of December 4, 1930, addressed to Mr. Trigo and for the benefit of this corporation.

"*Second:* That approval and ratification is given to the agreement entered into with Mr. Trigo to the effect that the insurance policies of this corporation will be purchased through Mr. Trigo as the existing ones expire, and Messrs. Goenaga and Juliá are to be exempted from any liability under the above-mentioned letter of December 4, 1930, by the taking out of such policies.

"*Third:* That the Treasurer should address a letter to Messrs. M. Y. Saldaña & Company, the agents of the present insurers of the properties of the corporation, in order that they shall abstain from renewing the policies that will hereafter expire, which policies will be purchased through Mr. Trigo in compliance with his agreement."

The lower court adjudged the defendants Esteban A. Goenaga and Mario Juliá to jointly purchase from the plaintiff, Dionisio Trigo, the ten bonds of the corporation Saldaña

Crosas Realty Co., Inc., and to pay the interest claimed in the complaint.

The defendants appealed from that judgment and assigned as their first ground of appeal the pronouncement of the lower court overruling the demurrer for want of facts sufficient to constitute a cause of action. We do not know the arguments adduced before the trial court in support of that demurrer. The defendants maintain that the obligation in the instant case is a conditional one, inasmuch as in the first paragraph of the letter addressed to the plaintiff, the following is stated:

"We take great pleasure in stating that it has been agreed by us that if at any time you should need to dispose of the newly issued bonds, you may give us an advance notice of thirty days, within which we shall purchase from you the aforesaid exchanged bonds at their value . . . . "

It is argued that this obligation is subject to the condition that the plaintiff would be in need of disposing of the bonds, and that it is not sufficient that he might wish to sell them, as the idea of necessity is different from that of desire, for sometimes many things are desired which are not needed, while others are needed although not desired.

In our opinion, the complaint is clear. It is alleged therein that on several occasions the plaintiff requested the defendants to fulfill the obligation above transcribed, allowing them the agreed period of thirty days for this purpose. We do not think that any essential allegation has been omitted. The facts set forth are sufficient to constitute a cause of action, especially since, in accordance with the same complaint, the defendants have not fulfilled the contracted obligation.

If we pass from the complaint to the evidence, we find that the record fails to show that the defendants raised at any time before the lower court the question that the plaintiff had no need to dispose of the funds. Nor is any mention made of this point in the answer to the complaint. As

we have already said, the defendants confined themselves to the statement that the contract was rescinded by virtue of a verbal agreement subsequently made. However, inasmuch as a demurrer is involved, we shall disregard the evidence and hold that the complaint states facts sufficient to constitute a cause of action and that the lower court did not commit the error attributed to it.

■ There are also assigned four grounds of appeal which really constitute only one. By them it is urged that manifest error was committed in the weighing of the evidence; that application was made of a criterion of doubt instead of applying that of a preponderance of the evidence; that the decision is contrary to the evidence; and that judgment against the defendants should not have been rendered.

The lower court gives a detailed account of the evidence introduced, which it analyzes carefully, and says:

"On the one hand, we have a document signed by the defendants, wherein the obligation sought to be enforced by the plaintiff is set forth. On the other, we have the testimony of the defendants, tending to prove a verbal contract subsequent to that alleged by the plaintiff and which rescinds the former contract, according to them.

"Taking into account all the circumstances of the case, is the defendants' evidence sufficient to prove the verbal contract alleged by them as against the written contract set forth by the plaintiff?

"When the contract of December 4, 1930, was entered into between the plaintiff and the defendants, the latter, at their own initiative or perhaps at the request of the plaintiff, deemed it advisable to put the agreement in writing, and they did so by signing the letter of December 4, 1930, which they delivered to the plaintiff and which is transcribed in the complaint. There was involved a contract the consideration of which amounted to $10,000, and in view of its importance, reason as well as business practice required that it should be reduced to writing. It was sought afterward, as claimed by the defendants, to leave the contract of December 4, 1930, without effect, and according to their allegations, the plaintiff proposed, and they accepted, the alleged agreement or contract of June 6, 1932. This second contract was as important to the defendants as the one of December 4, 1930, was to the plaintiff, for in the first contract

an obligation involving the sum of $10,000 was constituted in favor of the plaintiff, whereas in the second such obligation was canceled to the benefit of the defendants. However, despite the importance of the contract of June 6, 1932, the defendants never sought to reduce the same to writing. On the contrary, they received several letters, some of them from the plaintiff and others from his attorneys, demanding the performance of the contract of December 4, 1930, and although they were asked in some of them to answer in writing, they chose to disregard plaintiff's request and failed to assert in writing their rights under the alleged contract of June 6, 1932. It so seemed as if the plaintiff was endeavoring to make his rights appear in writing while the defendants persisted in keeping their own concealed, for contrary to the common business practice, whenever they received a letter from the plaintiff or his attorneys, instead of answering it in writing, they took the trouble to go personally to the office of the plaintiff or his attorneys to answer verbally the letters which they received.

''  *       *       *       *       *       *       *

''The evidence for the defendants herein is not the strong, clear, and convincing proof required by the decisions in cases of this kind. There is not the slightest trace of written evidence which might throw light upon this matter, in spite of the many opportunities which the defendants had, at least to answer the letters of the plaintiff and his attorneys insisting on the existence of their alleged contract. Nor is there a single testimony of persons, alien to the defendants, who by reason of their status as disinterested witnesses might be accorded some credit by the court.

''The defendants by their conduct seemed rather to accept than repudiate the rights which the plaintiff and his attorneys claimed on their letters. The minutes of the special meeting of the Board of Directors of the Saldaña Crosas Realty Co. constitutes evidence that at the time the contract of June 6, 1932, was made, if at all, the defendants fulfilled their part of the contract, but it is no evidence of the making of the contract itself, which the defendants now set up, for the plaintiff had no intervention whatsoever in that document, and therefore he is not bound by the statements contained therein with respect to the existence of the contract.

''The possession by the defendants of the insurance application forms which they introduced in evidence is a circumstance that throws little or no light upon the existence of the alleged contract. The plaintiff explained how and why were such printed forms delivered to the defendants, and if the latter deemed it advisable to

keep said forms in order to use them as evidence of the alleged contract, why did not they seek to obtain some written evidence from the plaintiff? That evidence would have been more persuasive to the court, inasmuch as those printed forms say nothing regarding the alleged contract, and their probatory value is reduced to the mere inference that might be drawn from the fact that said forms were in the possession of the defendants. Nor are we impressed by the circumstance that a copy of the minute of the special session held by the Saldaña Crosas Realty Co., Inc., was delivered to Mr. Soto Gras, for, as we have already said, this document does not prove the existence of the contract, since the plaintiff was not a party thereto and its delivery to Mr. Soto Gras merely implies that on the date of delivery, which is comparatively a recent one, the defendants relied on that document, as they do now, to prove a contract the existence of which does not appear from the evidence to have been admitted at any time either by the plaintiff or by his attorneys.

"From the documentary evidence of the plaintiff and of the defendants there appears a circumstance which is considerably adverse to the defendants. The latter alleged that the verbal contract was made on or about June 6, 1932. From the minutes of the special meeting of the Saldaña Crosas Realty Co. it appears that the call for said meeting was issued on June 7, 1932. Therefore, the contract relied on by the defendants could not have been made later than June 7, the date on which the said corporation had knowledge thereof and called for a special meeting at which said contract was to be considered. It appears from plaintiff's exhibit A that on the same day, June 6, 1932, the date on which the defendants claim that the verbal contract was made, the plaintiff requested the performance of his contract of December 4, 1930. Thus, while the defendants allege that on June 6 the contract of December 4, 1930, was rescinded, the plaintiff at that time was finally requesting the performance of the same contract.

"Exhibit A of the plaintiff textually reads as follows:

" 'Sobrinos de Izquierdo, Inc.—San Juan, P. R.—June 6, 1932. —Drs. Esteban Goenaga and Mario Juliá, San Juan, P. R.—Dear Sirs: I hereby ratify my letter of May 3, and as I asked you therein, I request you to answer me in writing.

" 'Some weeks ago my friend Don Esteban de Goenaga came to visit me, but certain obligations which I have contracted compel me to ratify the letter above referred to, and expecting a favorable answer from you, I remain, Very truly yours, (Sgd.) D. T.

" 'Dr. Goenaga, Allen 87, San Juan,—Dr. Juliá, Stop 29½, Hato Rey, P. R.'

"From exhibit A already transcribed, it is readily inferred that the defendant Dr. Goenaga went to see the plaintiff in regard to the obligation of December 4, 1930 (it does not appear from the evidence that the plaintiff and the defendants had any other business than that which is the object of this action), and that the plaintiff was considering a proposition of the defendants when he wrote them:

" 'Some weeks ago my friend Don Esteban de Goenaga came to visit me, but certain obligations which I have contracted compel me to ratify the letter above referred to, and expecting a favorable answer from you. . . .'

"Hence, any hope that the defendants might have had in connection with the matters dealt with in the interview to which the letter refers, was definitely vanished by the letter of June 6, 1932. It was on the same day on which that letter was received, or on the following day, that the Board of Directors of the Saldaña Crosas Realty Co. met to consider the proposition which the plaintiff had made to the defendants, according to them.

"There is no evidence on the part of the defendants which contradicts or in any way explains the coincidence that such letter was written on the same day on which they claim that the contract was made. The letter is inconsistent with the contract alleged by the defendants, and if it was prior thereto, although written on the same day, the defendants, who have the burden of proof, should have given some explanation for the change brought about upon the plaintiff in rescinding or novating an obligation the fulfilment of which he was requesting on that same day, June 6, in the manner which so clearly and definitely appears from the text of the letter."

The analysis made by the lower court is entirely in accord with the evidence introduced. We fail to find that manifest error has been committed in the weighing of the same. Nor does it appear that the trial court acted moved by passion, prejudice, or bias, and therefore, as a question of fact is involved, we hold that the judgment appealed from should be affirmed.